IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Keller Logistics Group, Inc., et al., | Case No. 3:19 CV 735 |
| Plaintiffs, | MEMORANDUM OPINION SUPPLEMENTING ORDER <u>DENYING MOTION TO REMAND</u> |
| -vs- | |
| Navistar, Inc., | JUDGE JACK ZOUHARY |
| Defendant. | |

## INTRODUCTION

In April 2019, Defendant Navistar, Inc., removed this case from Ohio state court, following dismissal of the only non-diverse defendant (Doc. 1). Plaintiffs Keller Logistics Group, Inc., Thomas Keller Leasing Company, Inc., and Thomas Keller Trucking, Inc., move to remand (Doc. 4), citing the one-year limit for removal under 28 U.S.C. § 1446(c). Navistar opposes (Doc. 11). This Court heard argument at a Record Hearing (Doc. 16) and denied the Motion to Remand in an earlier Order (Doc. 17). This Opinion follows.

## BACKGROUND

Plaintiffs are Ohio corporations that own, operate, and lease a fleet of commercial trucks (Doc. 1-3 at 2–3). Navistar -- a Delaware corporation with its principal place of business in Illinois -- manufactures commercial trucks (Docs. 1 at 2; 1-3 at 3). Navistar distributes its trucks through authorized dealers like Defiance Truck Sales & Service, Inc. (the Dealer), which is based in Ohio (Doc. 1-3 at 2–3).

In 2011 and 2012, Plaintiffs purchased or leased sixty-five Navistar trucks from the Dealer (*id.* at 4–5). The trucks allegedly began to break down shortly afterward (*id.* at 5). In 2015, Plaintiffs sued Navistar and the Dealer in Ohio state court (Doc. 11 at 7). Plaintiffs voluntarily

dismissed the suit later in 2015 and refiled against the same defendants in 2016 (*id.*). Over the next two years and four months in state court, the case endured a motion for judgment on the pleadings, discovery, and a motion for summary judgment (Docs. 1 at 1–2; 4-1 at 5–7).

In March 2019, as the summary judgment motion was pending in state court, Plaintiffs voluntarily dismissed the Dealer, leaving Navistar as the only defendant (Docs. 1 at 2; 11 at 7). Navistar removed, citing this Court's diversity jurisdiction (Doc. 1 at 2). Plaintiffs move to remand (Doc. 4).

## D<span style="font-variant:small-caps">ISCUSSION</span>

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under 28 U.S.C. § 1332(a), federal courts have jurisdiction over civil cases in which the amount in controversy exceeds $75,000 and the parties are completely diverse. This diversity jurisdiction is designed "to protect out-of-state parties from the potential risk that local juries (or judges) would favor in-state parties." *Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 956 (6th Cir. 2017).

"While § 1332 allows plaintiffs to invoke the federal courts' diversity jurisdiction, § 1441 gives defendants a corresponding opportunity." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). So long as the federal court has jurisdiction, 28 U.S.C. § 1441(a) allows civil defendants to remove actions from state court to federal court. Where a defendant seeks to remove a case on the basis of diversity jurisdiction, the amount-in-controversy and complete-diversity conditions must exist at the time of removal. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007). If these conditions are not initially met but are later satisfied, a defendant may remove "within 30 days" of receiving notice that the case "has become removable." 28 U.S.C. § 1446(b)(3). Such removal,

however, typically cannot occur "more than 1 year after commencement of the action." *Id.* § 1446(c)(1).

Here, this case was not removable until March 2019, when Plaintiffs dismissed the Ohio-based Dealer. Navistar removed within thirty days. But because the case began in 2016 and removal did not occur until 2019, Navistar was far past the one-year limit for removal.

The removal statute, however, contains an exception to the one-year limit. A defendant may remove a case beyond one year if "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). Navistar argues this exception applies here. Navistar specifically contends Plaintiffs joined the Dealer and kept it in the case beyond one year "for the sole and express purpose of avoiding federal jurisdiction" (Doc. 11 at 5).

**Bad-Faith Standard**

Congress added the bad-faith exception to the removal statute in 2011 as part of the Jurisdiction and Venue Clarification Act. Pub. L. No. 112-63, 125 Stat 758 (2011). District courts within the Sixth Circuit agree the bad-faith inquiry is "whether the plaintiff engaged in intentional conduct to deny the defendant the chance to remove the case to federal court." *Comer v. Schmitt*, 2015 WL 5954589, at *2 (S.D. Ohio 2015), *report and recommendation adopted*, 2015 WL 7076634 (S.D. Ohio 2015). *See also Williams v. 3M Co.*, 2018 WL 3084710, at *3 (E.D. Ky. 2018); *Dutchmaid Logistics, Inc. v. Navistar, Inc.*, 2017 WL 1324610, at *2 (S.D. Ohio 2017), *report and recommendation adopted*, 2017 WL 3085863 (S.D. Ohio 2017); *Hiser v. Seay*, 2014 WL 6885433, at *4 (W.D. Ky. 2014). But neither the Sixth Circuit nor this District has defined the meaning of bad faith in the amended statute.

3

Under the intentional-conduct standard, bad faith does "not refer simply to a desire to stay in state court," *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1273 (D.N.M. 2014), and it "need not amount to malicious or unsavory conduct," *Comer*, 2015 WL 5954589, at *4. Rather, bad faith is present where a plaintiff employs tactics designed "specifically to defeat diversity jurisdiction," *Hiser*, 2014 WL 6885433, at *4 (citation omitted), for the "sole purpose of defeating removal," *Massey v. 21st Century Centennial Ins. Co.*, 2017 WL 3261419, at *3 (S.D.W. Va. 2017). Where, as here, a plaintiff joins and keeps a non-diverse defendant in a state-filed case, bad faith turns on whether the plaintiff's desire to remain in state court was "the but-for cause" of keeping the non-diverse defendant in the case beyond the one-year mark. *Aguayo*, 59 F. Supp. 3d at 1273.

**Burden of Proof**

As for burden of proof, Navistar, as the removing party, bears the burden of proving bad faith. *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). Less clear is the appropriate evidentiary standard. *See* E. Farish Percy, *Inefficient Litigation over Forum: The Unintended Consequence of the JVCA's "Bad Faith" Exception to the Bar on Removal of Diversity Cases After One Year*, 71 OKLA. L. REV. 595, 625 (2019) (collecting bad-faith-exception cases and noting the "incongruity" of their evidentiary standards). Some district courts apply a clear-and-convincing-evidence standard. *See, e.g.*, *Forth v. Diversey Corp.*, 2013 WL 6096528, at *2 (W.D.N.Y. 2013). But others have found that a lower standard applies. *See, e.g.*, *Holman v. Coventry Health & Life Ins. Co.*, 2017 WL 5514177, at *2 (W.D. Okla. 2017).

A lower standard may be appropriate for several reasons. First, Congress added the bad-faith exception "to protect access to a federal forum." *Id.* Given that direct evidence of bad faith "will rarely be available even when bad faith is actually involved," imposing too high a standard would defeat the exception's purpose. *Id.* Second, when the amount in controversy is at issue, the

burden of proof is only a preponderance of the evidence. *Rogers*, 230 F.3d at 871. And unlike the amount in controversy, which is a jurisdictional requirement, the one-year removal limit is an "excusable" procedural rule. *Ehrenreich v. Black*, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014). Imposing a higher burden to circumvent a procedural time limit, when the jurisdictional requirements are not in question, makes little sense.

But this Court need not resolve this debate today. Here, even assuming the high standard of clear and convincing evidence applies, Navistar proves that Plaintiffs acted in bad faith to prevent removal.

### Plaintiffs' Asserted Motive

Plaintiffs contend they joined and kept the Dealer in the case because the claims against it were valid (Doc. 4 at 4). The bad-faith exception, however, "focuses not on the validity of the plaintiff's claim against a non-diverse party at the time the action was filed," *Massey*, 2017 WL 3261419, at *3, but on whether "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action," 28 U.S.C. § 1446(c)(1). Stating a valid claim against the non-diverse defendant does not immunize the plaintiff from a finding of bad faith. *See Massey*, 2017 WL 3261419, at *3. Bad faith exists where the plaintiff has no intention of pursuing judgment against the non-diverse defendant and instead joins and keeps that defendant in the case for the purpose of thwarting removal. *Id.*

### Plaintiffs' 2015 Admission

Plaintiffs made their true intention clear at a meeting shortly before the original suit was filed in 2015. That meeting was between Plaintiffs' principal, Bryan Keller; Plaintiffs' counsel, Marc Warncke; the Dealer's principal, Craig Hammersmith; and Hammersmith's attorney, Ralph Gallagher (Doc. 11 at 9–10; *see also* Doc. 11-9 at ¶ 3). Keller called the meeting because he

5

"wanted to explain to [his] long-time friends, to the folks he had been doing business with for decades, why [he was] suing them" (Hrg. Tr. at 9; *see also* Doc. 4-14 at 53). At this meeting, Keller admitted that "he had 'no problem' with [the Dealer]," but his lawyer told him to name the Dealer as a defendant "in order to keep the suit in Ohio instead of Federal Court" (Doc. 11 at 9–10) (citation omitted). This account is corroborated by an interrogatory response from the Dealer (Doc. 1-8 at 3–4), Hammersmith's affidavit (Doc. 11-8 at ¶¶ 5–6), Gallagher's affidavit (Doc. 11-9 at ¶¶ 4–6), and a memorandum prepared by Gallagher the day after the meeting (Doc. 11-10 at 2).

Plaintiffs provide no evidence refuting this admission. Instead, they argue this Court should not consider the admission because it is hearsay. But neither Keller's statement, nor the underlying statement from his lawyer, is hearsay. Keller is Navistar's party opponent, and his attorney is his agent. *See* Federal Evidence Rule 801(d)(2). As for the documents prepared by Hammersmith and Gallagher recalling Keller's statement, this Court may consider "affidavits" and other documents "[w]hen deciding a motion to remand." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). Indeed, district courts routinely rely on sworn affidavits to determine whether bad faith is present. *See, e.g.*, *Williams*, 2018 WL 3084710, at *2, *4 (discussing evidence from affidavits); *Hiser*, 2014 WL 6885433, at *1 (describing contents of affidavit).

And when the facts presented in those affidavits are both undisputed and directly probative of bad faith, this Court cannot ignore them. *See Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) (holding that district court was required to consider undisputed sworn affidavits in support of removal). If Keller did not make the alleged admission, Plaintiffs had a simple solution -- file an affidavit from Keller denying it. Plaintiffs filed a Keller affidavit (Doc. 4-5), but it is silent on the meeting and the admission. The undisputed admission is direct evidence that Plaintiffs joined the Dealer solely to defeat diversity and prevent removal.

**No Active Litigation**

Plaintiffs' admission is further supported by the lack of active litigation against the Dealer (Doc. 11 at 11–15). The first litigation hurdle was the motion for judgment on the pleadings. Although Plaintiffs argue they "successfully resisted" the motion (Doc. 4-1 at 3), the motion was based only on statute-of-limitations and standing arguments (Doc. 11 at 12). Resisting the motion did not involve justifying the Dealer's presence in the case.

Next came discovery, during which Plaintiffs did not depose any Dealer employee or representative (*id.*). While Plaintiffs issued 279 requests for production to Navistar, they issued only thirty-four requests to the Dealer (*see id.* at 11; *see also* Doc. 1-9 at 7–11). And many of those thirty-four requests targeted evidence of Navistar's behavior, not that of the Dealer (*see* Doc. 1-9 at 7–11).

Then came the motion for summary judgment. In Plaintiffs' 106-page response brief, Plaintiffs barely mentioned the Dealer, stating, for example, "[a]s the moving party, *Navistar* bears the initial burden" (Doc. 1-10 at 104) (emphasis added) (*see also* Doc. 11 at 13). Defendants' reply focused on Plaintiffs' failure to attribute misconduct to the Dealer (Hrg. Tr. at 6). It was then, when Plaintiffs were held to account for the Dealer's presence in the case, that Plaintiffs voluntarily dismissed the Dealer.

And Plaintiffs did all this, throughout nearly two-and-a-half years in state court, without ever once engaging the Dealer in settlement discussions (Doc. 11 at 12).

**The Record Hearing**

The Record Hearing confirmed that the sole reason for keeping the Dealer in the case was to remain in state court. At the Hearing, Plaintiffs' counsel stated that Plaintiffs intended to pursue the Dealer to judgment but later found that the Dealer was "pretty much a conduit for Navistar's

7

misrepresentations" (Hrg. Tr. at 7). This Court asked Plaintiffs' counsel, "What new fact [against the Dealer] that you thought you had at the outset did you not have when it came time to oppose summary judgment?" (Hrg. Tr. at 11–12). Plaintiffs' counsel could not answer that question. Plaintiffs' counsel repeated why the claims against the Dealer were valid but, when pressed, could not explain what event during the litigation turned those valid claims into a voluntary dismissal (*id.*). No surprise.

## CONCLUSION

As confirmed by Plaintiffs' own admission, neither serious fact discovery against the Dealer, nor pursuit of the Dealer to judgment, was ever their objective. Joining the Dealer and keeping it in the case beyond the one-year mark was intentional conduct to deny Navistar the opportunity to remove. The Motion to Remand (Doc. 4) is denied.

IT IS SO ORDERED.

        s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

August 6, 2019